*249 OPINION OF THE COURT
Smith, J.
The issue before this Court is whether the Town of Amherst Industrial Development Agency (AIDA) and Uniland Partnership violated General Municipal Law § 862 (1) by virtue of moving the accounting firm BDO Seidman, LLP (BDO) from the City of Buffalo to the Town of Amherst. We conclude that section 862 (1) was violated and we affirm the order of the Appellate Division both as to the violation and as to the remedy it imposed.
Enacted in 1969, article 18-A of the General Municipal Law authorizes the Legislature to create industrial development agencies with the purpose of preventing unemployment and economic deterioration in New York State (General Municipal Law § 852). To fulfill their role in the promotion and encouragement of economic development, industrial development agencies were given authority to borrow money, issue bonds and enter into agreements allowing third parties to avoid certain taxes (General Municipal Law § 858 [12]).
In June 1995, Uniland Partnership applied to AIDA for inducement to build a new office building (the Project) in the University Corporate Centre complex in the Town of Amherst. Under a financing agreement, AIDA agreed to provide assistance for Uniland’s proposal. In exchange, AIDA took title to the project, leased it back to Uniland, and exempted Uniland from substantial real property, sales and mortgage recording taxes. Petitioners — the City of Buffalo and the owners of several office buildings in downtown Buffalo — subsequently commenced a declaratory judgment action seeking to nullify AIDA’s actions. The Appellate Division affirmed Supreme Court’s dismissal of that action on ripeness grounds. In June 1996, AIDA approved Uniland Partnership’s sublease of a small portion of office space in the Project to BDO. With less than a month remaining on its lease in downtown Buffalo, BDO moved into the Project.
Petitioners brought this CPLR article 78 proceeding in November 1996, challenging AIDA’s determinations in approving the Project and the sublease to BDO. Supreme Court dismissed the proceeding in its entirety. The court determined that the prohibition in General Municipal Law § 862 (1) against actions resulting in the removal of a project occupant from one “area” of the state to another should not be narrowly construed to bar a move from one municipality to another. In addition, *250 the court rejected petitioners’ argument that AIDA’s approval of the sublease caused EDO to abandon its downtown Buffalo facility.
On appeal, the Appellate Division held that AIDA’s determination approving the Project was lawful, but reinstated the petition insofar as it challenged AIDA’s approval of EDO’s sublease, stating that it violated General Municipal Law § 862 (1). The Court held that EDO’s move constituted a removal “from one area of the state to another,” in violation of section 862 (1). It also held that EDO “abandoned” its lease of its downtown Buffalo offices because it moved to the Project with one month left on its lease. The Appellate Division therefore nullified the sublease and remitted the matter for a determination of the tax consequences of that nullification. On remittal the Supreme Court ordered Uniland to repay a portion of the taxes avoided because of AIDA’s financial inducements, proportionate to the facilities EDO occupied in the new Project. The Appellate Division affirmed.
On this appeal, the Buffalo petitioners seek a determination that a violation of the statute occurred and that all taxes avoided by Uniland in connection with the Project be paid in full. Respondents AIDA and Uniland ask that the term “area” in General Municipal Law § 862 (1) be defined so as not to prohibit movement between municipalities, and, alternatively, urge that EDO’s move falls into one of the exceptions in General Municipal Law § 862 (1). Finally, they argue that if liable, Uniland ought to be responsible only for the taxes as they apply to EDO’s participation in the Project.
General Municipal Law § 862 (1), commonly known as the “anti-pirating” provision, provides as follows:
“No financial assistance of the agency shall be used in respect of any project if the completion thereof would result in the removal of a facility or plant of the project occupant from one area of the state to another area of the state or in the abandonment of one or more plants or facilities of the project occupant located within the state, provided, however, that neither restriction shall apply if the agency shall determine on the basis of the application before it that the project is reasonably necessary to discourage the project occupant from removing such other plant or facility to a location outside the state *251 or is reasonably necessary to preserve the competitive position of the project occupant in its respective industry.”
There are two issues to be decided in this appeal. The first is whether AIDA’s financial assistance to Uniland and its approval of the EDO sublease violated General Municipal Law § 862 (1) because such actions resulted in either EDO’s abandonment of its facilities or the removal of its facilities from one area of the state to another. The second issue is remedy — whether all of the taxes avoided by Uniland, not just the portion attributable to EDO, should be reimbursed.
We conclude that AIDA’s actions were in violation of General Municipal Law § 862 (1) because they resulted in EDO’s removal “from one area of the state to another area of the state.” It appears that the Legislature did not intend the use of the term “area” to be synonymous with the term “municipality.” General Municipal Law § 854 (3) defines “Municipality” as “any county, city, village, town or Indian reservation in the state.” The Legislature’s use of the term “area” in section 862 (1) is, therefore, indicative of an intent to apply a meaning different than municipality. Likewise, we reject respondents’ view that “area” means “area of economic impact” — such as western New York. That interpretation would largely undermine the clear purpose of the anti-pirating provision.
Although the Legislature did not provide a specific definition of “area,” our interpretation is necessarily informed by the purpose of the statute. The overarching purpose of the statute is to help New York communities compete with communities outside the state, and the purpose of the anti-pirating provision is to “prevent economic raiding within the State” (Governor’s Approval Mem, Bill Jacket, L 1969, ch 1030, at 51). Although we decline to specifically define the term “area,” we conclude, under the facts presented here, EDO moved from one “area” of the state to another. Moreover, there was no abandonment of the downtown Buffalo location since EDO’s lease was about to expire.
Respondent’s alternative argument — that the exception to General Municipal Law § 862 (1) applies because AIDA had determined that the project was reasonably necessary to preserve EDO’s competitive position — also should be rejected. As the Appellate Division concluded, “Nothing in the record indicates * * * the move was reasonably necessary to preserve *252 the competitive position of the firm in its industry. Rather, the record establishes that EDO * * * sought to move its facilities to the Uniland office building for the convenience of its customers and employees” (248 AD2d 930, 931 [1998]).
Petitioners argue that after finding a violation of section 862 (1), the lower court improperly limited the penalty by requiring Uniland to pay taxes only on the percentage of the Project’s floor space leased to EDO. They urge that because the statute provided that “[n]o financial assistance” shall be provided to projects in violation of the statute, Uniland should be required to pay all of the taxes avoided on the entire Project. We conclude that the lower court’s remedy was reasonable and in keeping with the intent of the statute. Although the statute is silent on the issue, it would be unduly punitive to require Uniland to repay all of the tax benefits it received in connection with the Project where only a small percentage of the Project was financed in violation of the statute.
Accordingly, the order of the Appellate Division should be affirmed, without costs.
Chief Judge Kaye and Judges Ciparick, Rosenblatt, Graffeo and Read concur; Judge Wesley taking no part.
Order affirmed, without costs.